Arasto Farsad, Esq. (SBN 273118)
Nancy Weng, Esq. (SBN 251215)
FARSAD LAW OFFICE, P.C.
1625 The Alameda, Suite 525
San Jose, CA 95126
Telephone Number: (408) 641–9966
Facsimile Number: (408) 866–7334
Email Address: FarsadLaw1@gmail.com

Attorney for Plaintiff
RAJANI KOLLI

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVSON

| | |
|---|---|
| In re: <br><br> VIKRAM SRINIVASAN, <br><br> Debtor, <br><br>———————————————— <br><br> RAJANI KOLLI, <br><br> Plaintiff, <br><br> v. <br><br> VIKRAM SRINIVASAN <br><br> Defendant. | Case No. 20-51735 SLJ <br> Chapter 11 <br><br> AP Case No. <br><br> **ADVERSARY COMPLAINT FOR NONDISCHARGEABILTY OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6)** <br><br> **DEMAND FOR JURY TRIAL** <br><br> **JUDGE: HON. STEPHEN L. JOHNSON** |

Plaintiff RAJANI KOLLI ("Plaintiff") hereby alleges the following:

## I. INTRODUCTION

1. Debtor-Defendant VIKRAM SRINIVASAN ("Defendant"), through subterfuge and fraud, has managed to pilfer over one million dollars (**$1,000,000.00**) of Plaintiff's hard-earned money.

2. Defendant created an elaborate scheme to induce Plaintiff into investing in Defendant's limited liability company and Defendant's investment plan.

3. Defendant used Plaintiff's funds for Defendant's own benefit and has failed to repay Plaintiff.

4. As a result of Defendant's fraud and misconduct, Plaintiff has been irreparably harmed.

5. Accordingly, Plaintiff brings suit against Defendant for non-dischargeability of Defendant's debt, for punitive damages, and for attorney's fees and costs.

## II. PARTIES

6. Plaintiff, RAJANI KOLLI ("Plaintiff"), is a California resident and a creditor in this bankruptcy case.

7. Debtor-Defendant, VIKRAM SRINIVASAN ("Defendant"), is an individual residing and conducting business in the County of Santa Clara and Northern District of California.

8. On or about December 10, 2020, Defendant filed a voluntary petition for relief under the provisions of Chapter 11 of the United States Bankruptcy Code.

## III. JURISDICTION AND VENUE

9. This court has jurisdiction over this action pursuant to 11 U.S.C. § 523 and 28 U.S.C. §§ 1334 and 157. Section 1334(b) "vests jurisdiction over bankruptcy matters in the district court by conferring jurisdiction over all civil proceedings arising under title 11."[1]

10. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157. This adversary proceeding relates to the Chapter 11 bankruptcy petition of Vikram Srinivasan, case number 20-51735 ("Bankruptcy Case"), now pending in the U.S. Bankruptcy Court for the Northern District of California, San Jose Division.

11. Venue is proper in the Northern District of California according to 28 U.S.C. §§ 1408 and 1409.

## IV. GENERAL ALLEGATIONS

12. In October 2019, Plaintiff was introduced to Defendant by Parthhesh Kumar Brahmbhatt.

13. October 20, 2019, Plaintiff and Defendant met to discuss real estate investment opportunities. During

---

[1] *In re Franklin*, 802 F.2d 324, 326 (9th Cir. 1986).

the meeting, Defendant proposed that Plaintiff, as the 80% managing member of Atlas Capital Group, LLC ("Atlas"), create a new limited liability company and transfer title of various properties that Atlas owned including: (i) 1915 Buttner Road in Pleasant Hill, CA 94523 ("Buttner Property"); (ii) 1014 Diamond Street, San Francisco, California ("Diamond Property"); and (iii) a property on Page Street in Oakland, California ("Page Property").

14. Defendant also proposed that he and Plaintiff submit a back-up offer to the seller of the 135 Wetmore Street in San Francisco, CA 94108 ("Wetmore Property"), through a different entity and on different terms. This would allow Plaintiff to cancel the underlying contract between Atlas and the seller.

15. Defendant informed Plaintiff that Defendant had an existing, single-member limited liability company, named Paragon Holdings, LLC ("Paragon"), a Montana limited liability company.

16. Similar to the agreement with Atlas, Defendant proposed that Plaintiff be made an 80% owner of Paragon, although Defendant demanded that Defendant remain the "managing partner."

17. Defendant proposed that Paragon submit a back-up offer on the Wetmore Property for **$2,400,000.00**, with an initial deposit of **$650,000.00**. Defendant would facilitate financing for the remaining **$1,750,000.00** of the purchase price, and Plaintiff's remaining **$350,000.00** would be returned to him personally.

18. Defendant's representation was false in that he never intended to return **$350,000.00** to Plaintiff, and that Defendant knew his representation was false.

19. Defendant represented to Plaintiff that he would be able to easily obtain the financing to close on the Wetmore Property.

20. Defendant's representation was false in that he did not have the means to obtain **$1,750,000.00** in financing, and knew it to be false.

21. Plaintiff demanded the lower initial deposit, increased financing, and return of the $350,000.

22. Based upon Defendant's misrepresentations, Plaintiff agreed to the terms proposed by Defendant.

23. In November 2019, Defendant formed 1014 Diamond Street LLC ("Diamond Street LLC").

24. Plaintiff subsequently transferred title to the Buttner Property, the Diamond Property, and the Page Property from Atlas to Diamond Street LLC.

25. Plaintiff was made 100% owner of Diamond Street LLC.

26. Defendant then immediately filed for bankruptcy on behalf of Diamond Street LLC as both the Buttner Property and Page Property were in default.

27. On November 8, 2019, Plaintiff and Defendant entered into a Membership Agreement of Paragon Holdings, LLC ("Membership Agreement"), in Santa Clara County under which Plaintiff was made an 80% owner of Paragon.

28. Defendant remained the 20% owner and managing member of Paragon. Under the Membership Agreement, Plaintiff agreed to lend Paragon a total of **$650,000.00** to be used toward the purchase of the Wetmore Property.

29. Defendant agreed to obtain the necessary loans and to add Plaintiff to Paragon's bank account.

30. Defendant represented to Plaintiff that Defendant could easily obtain the necessary loans to fund the remainder of the purchase of the Wetmore Property.

31. Defendant's representation was false and Defendant knew it to be false based upon his and Paragon's financial condition.

32. On November 7, 2019, Paragon made a back-up offer on the Wetmore Property for **$2,400,000.00**, which would go into effect upon the cancellation of the Purchase Contract with Atlas.

33. At the time, there was **$1,000,000** sitting in escrow with Stewart Title Company. There was to be an initial deposit of **$650,000.00** with terms as set forth in Addendum No. 1 with financing in the amount of **$1,750,000.00**.

34. Addendum No. 1 provides: "Immediately upon elevation of the back-up offer to the primary position, buyer and seller agree to sign escrow instructions with the escrow agent for the current primary offer to distribute all funds held in escrow as follows: (1) $350,000 to be distributed to seller; (2) $300,000 will be transferred to the new escrow agent (Orange Coast Title of Pleasanton) and (3) the remaining balance will be distributed according to buyer's instructions to escrow, as buyer's sole discretion."

35. In other words, the seller would receive **$350,000.00** of the **$650,000.00** initial deposit immediately, and the remaining **$300,000.00** would be transferred to a new escrow with Orange Coast Title.

36. The remaining balance sitting in the Stewart Title Escrow (**$350,000.00**) was to remain, and then distributed directly back to Plaintiff per the agreement between Defendant and Plaintiff.

37. On November 12, 2019, Atlas canceled the contract with the seller. On November 12, 2019, the seller accepted the back-up offer from Paragon.

38. Unbeknownst to Plaintiff, Defendant and the seller did not follow the terms of the purchase agreement and addendum.

39. Instead, Defendant arranged for the following: (1) **$350,000.00** to be transferred from Stewart Title to the seller directly; (2) the remaining **$650,000.00** to be transferred from Stewart Tittle to Orange Coast Title; (3) the entire **$650,000.00** with Orange Coast Title was then wired to the seller; and (4) the seller than wired **$350,000.00** to Paragon.

40. This was Defendant's way of ensuring that the **$350,000.00** was distributed to Defendant.

41. Defendant never added Plaintiff to Paragon's bank account; and Defendant had, and continues to have, sole possession, custody, and control of the **$350,000.00** that was distributed to Paragon.

42. Defendant represented to Plaintiff that the **$350,000.00** had been transferred from Paragon's account into an escrow.

43. Plaintiff pressed Defendant for more information and questioned him about which escrow. Defendant

- 5 -
ADVERSARY COMPLAINT FOR NON-DISCHARGEABILITY   Case No. 20-51735
Case: 21-05007   Doc# 1   Filed: 03/20/21   Entered: 03/20/21 17:10:34   Page 5 of 15

represented that he had transferred the **$350,000.00** to Greenhedge Escrow.

44. Defendant's representation was false and knew it was false. Defendant finally attempted to prove this transfer through an email confirmation and receipts. One of the receipts reflected the wrong year (2018).

45. Plaintiff, concerned that Defendant was not being truthful, called Greenhedge Escrow to confirm the deposit, and the authenticity of the emails and receipts.

46. **On or about January 31, 2020, Elena Aquino of Greenhedge Escrow, the very escrow agent listed on the receipts, advised Plaintiff that the receipts were not issued by her office.**

47. Even after being confronted with this information, Defendant continued to weave his web of lies and deception.

48. Defendant then claimed that the funds had been transferred to yet another escrow -- this time with Green Escrow Services, Inc.

49. Defendant again presented Plaintiff with receipts, and even provided an email address for the escrow agent, Kathy Lozano, so that Plaintiff could email her and confirm same. The email address was kathy@greenescrow.net.

50. On February 1, 2020, relying upon the contact information provided by the Defendant, Plaintiff emailed "kathy@greenescrow.net" to connect with Kathy Lozano. The person, who the Plaintiff presumed was Kathy Lozano, replied and confirmed the transfer.

51. Not 100% convinced, Plaintiff contacted Green Escrow, Inc. to confirm the transfer.

52. **Kathy Lozano then confirmed that there was <u>no</u> such transfer and requested that Plaintiff send her the receipts and supposed email communications between her and Plaintiff.**

53. Upon receipt, Jennifer Barnes, the East Bay branch manager for Green Escrow, Inc., confirmed that the communication was <u>not</u> from Kathy Lozano, and noting:

"The whole thing is fake. I hope you didn't send any money. I have alerted my IT department and they have confirmed that our email is secure and the email address 'kathy@greenescrow.net' is not affiliated with our company. It appears that your account may have been a phishing email and unfortunately they used Kathy's name."

54. Indeed, Green Escrow, Inc. uses the domain "greenescrow.biz," not "greenescrow.net" Plaintiff investigated further and discovered that the domain profile for greenescrow.net was created on February 1, 2020 — the very day that he had emailed who he thought was Kathy Lozano of Green Escrow, Inc.

55. Clearly, Defendant created the fake domain and email address and pretended to be Kathy Lozano of Green Escrow, Inc., all for the purpose of convincing Plaintiff that the funds had been deposited with Green Escrow Inc.

56. The funds were never, and have never been, deposited with Green Escrow, Inc.—despite Defendant's representations to the contrary.

57. Plaintiff contacted Orange Coast Title to determine whether Orange Coast Title was holding Plaintiff's funds in escrow.

58. On or about March 20, 2020, Orange Coast Title told Plaintiff that the entire **$650,000.00** that was previously in escrow was wired directly to the seller at Defendant's direction.

59. Orange Coast Title followed Defendant's instructions since he is managing member of Paragon.

60. Orange Coast Title provided Plaintiff with a settlement statement. This was the first time that Plaintiff discovered that the **$1,000,000.00** had not been distributed from the Stewart Title Company escrow in accordance with Addendum No. 1; but rather that the seller had been provided with the entire **$1,000,000.00**, and then wired **$350,000.00** back to Paragon directly.

61. Defendant failed to obtain the financing necessary to fund the remainder of the purchase price for the Wetmore Property and the deal fell through.

62. Thereafter, the Wetmore Property went into foreclosure. Tra Wetmore, LP, the former owner, lost the

- 7 -
ADVERSARY COMPLAINT FOR NON-DISCHARGEABILITY    Case No. 20-51735
Case: 21-05007   Doc# 1   Filed: 03/20/21   Entered: 03/20/21 17:10:34   Page 7 of 15

property in foreclosure but kept the **$650,000.00** initial deposit.

63. In addition to the investment opportunity for the Wetmore Property, Defendant also proposed that he and Plaintiff buy back the Buttner Property, which had been lost in foreclosure to the lender, Pivotal Capital Group II, LLC.

64. As described, at the time of the initial meeting between Plaintiff and Defendant, the Buttner Property was in foreclosure and had been previously owned by Atlas.

65. As described above, Defendant proposed, and Plaintiff agreed, to invest **$125,000.00** to save the Buttner Property from foreclosure.

66. Defendant further proposed that he and Plaintiff would then renovate and sell the Buttner Property for a profit.

67. Defendant proposed that he and Plaintiff, through Paragon, would make an offer of **$1,600,000.00** to purchase the Buttner Property from Pivotal Capital Group II, LLC, with a **$650,000.00** down payment.

68. Plaintiff would invest **$125,000.00** to be used as a portion of the down payment, with the remainder funded by Defendant and his sister. Defendant agreed to arrange financing for the remainder of the purchase price.

69. When Defendant made the representation, it was false in that Defendant had no intention of purchasing, renovating, or selling the Buttner Property. Rather, he intended to pocket Plaintiff's **$125,000.00**.

70. Plaintiff agreed to these terms and transferred **$125,000.00** to Paragon on November 29, 2019. As proof of the offer, Defendant sent Plaintiff a California Residential Purchase Agreement and Joint Escrow Instructions, dated November 27, 2019, reflecting an offer for the Buttner Property by Paragon for **$1,600,000.00**, with an initial deposit of **$650,000.00**.

71. Defendant's representation was false, and Defendant knew it was false, that this was a fake purchase agreement created by Defendant. The purchase agreement reflects Docusign signatures from Brad Rust on behalf of "Pivotal Capital Group" as the seller, as well as signatures from Paragon's real estate agent, Andrea Scott of Compass Realty, all on November 29, 2019.

72. Following receipt of this offer, Plaintiff kept inquiring as to the closing and proof that the funds of **$125,000.00** had been wired from Paragon into an escrow, and was informed by Defendant that the transaction was delayed-that it was progressing, but very slowly.

73. Defendant's representation was false and Defendant knew it was false. Defendant also informed Plaintiff that he was attempting to obtain financing through someone named "Chris" with First Bridge Lending.

74. Defendant was not seeking financing and knowingly represent this falsehood to the Plaintiff.

75. Defendant produced another fake receipt from Greenhedge Escrow, Inc. reflecting the **$125,000.00** transfer, which Plaintiff discovered was fabricated on or about February 2, 2020, after discussing it with Greenhedge Escrow, Inc.

76. Defendant knew that the receipt was false.

77. Suspecting that Defendant likely fabricated the November 27, 2019, offer on the Buttner Property as well, Plaintiff reached out to Pivotal Capital Group II, LLC concerning the offer.

78. On or about June 1, 2020, Attorney Darlene Hernandez, of Geraci Law Firm, on behalf of Pivotal Capital Group II, LLC, replied:

> "This letter will confirm that Pivotal, and Brad Rust, neither authorized, nor executed the alleged purchase agreement, nor had any transactions with Vikram Srinivasan, Paragon Holdings LLC and Greenhedge Escrow regarding the subject property. In fact, our client foreclosed on the subject property, which was sold to a third party on December 23, 2019. More importantly, when the purchase agreement was allegedly executed on November 29, 2019 Pivotal was the senior lienholder, and at that time did not have title to convey the subject property to anyone. That said, we have instructed our client to report the forgery to the Contra Costa County District Attorney's Office."

79. In response to Plaintiff confronting Defendant about facts with respect to the Wetmore Property and Buttner Property, Defendant admitted that he owed Plaintiff the **$1,126,000.00** that Plaintiff had invested and transferred to Paragon. The subterfuge was coming to an end.

80. Defendant signed a Personal Guaranty, dated February 1, 2020, personally guaranteeing payment of **$1,126,000.00** ("Personal Guaranty"). Section 9 of the Personal Guaranty provides as follows:

> "Whether or not legal action is commenced, dismissed, or pursued to judgment, the prevailing party shall be entitled to payment of all fees and costs (including, without limitation, attorney fees and costs) that may be incurred by such party in connection with the enforcement of this Guaranty . . . . In addition to the aforementioned fees, costs, and expenses, the prevailing party in any lawsuit on this Guaranty shall be entitled to its attorney fees, and all other fees, costs, and expenses incurred in any postjudgment proceedings to collect or enforce any judgment. This provision for recovery of postjudgment fees, costs, and expenses is separate and several and shall survive the merger of this Guaranty into any judgment on this Guaranty."

81. On January 20, 2020, Defendant returned **$48,000.00** to Plaintiff, leaving a balance owed of **$1,078,000.00** plus interest.

82. Defendant has not repaid Plaintiff the remaining **$1,078,000.00** plus interest.

83. On or about November 19, 2020, Plaintiff filed a lawsuit against Defendant and others in the Santa Clara County Superior Court, titled *Ranjani Kolli v. Vikram Srinivasan et al.*, case no. 20-CV-373756. (That case is pending but "stayed" due to the subject Chapter 11.)

84. On December 10, 2020, Defendant filed a Chapter 11 bankruptcy petition.

## V. FIRST CAUSE OF ACTION
Non-Dischargeability of Debt
(11 U.S.C. § 523(a)(2)(A))

85. Plaintiff re-alleges and incorporates by reference all paragraphs above as though fully set forth in this cause of action.

86. A debt incurred by a debtor who perpetrates a fraud is nondischargeable. Section 523(a)(2)(A) of title 11 provides, in relevant part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt--
>
> > (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
> >
> > > (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.[2]

87. As alleged above, Defendant made numerous concealments and misrepresentations. The concealments and misrepresentations made by Defendant to Plaintiff concerned important, material information that Plaintiff relied upon in agreeing to: (i) partner with Defendant; (ii) enter into the Membership Agreement with Defendant; (iii) used Plaintiff's funds to purchases the Wetmore Property and Buttner Property, including transferring said funds to Paragon; and (iv) continue to permit Defendant to remain as managing member and control Plaintiff's funds.

88. Defendant knew his misrepresentations were false and made them with the intention and purpose of deceiving Plaintiff.

89. Plaintiff was deceived into investing in Defendant's scheme, trusting Defendant, and permitting Defendant to be the managing manager of Paragon.

90. Plaintiff reasonably and justifiably relied on Defendant's representation because Defendant represented that he was an experienced real estate investor. Defendant promised Plaintiff's funds would not only be safe but would provide a significant return.

91. Defendant was also the managing member of Paragon and gained the trust and confidence of Plaintiff. The misrepresentations and concealments were done to benefit Defendant personally.

92. As a direct and proximate result of Defendant's concealments and misrepresentations, Plaintiff has suffered substantial damage.

93. Defendant has acted with malice, oppression, and fraud, and in conscious disregard of Plaintiff's

---

[2] 11 U.S.C. § 523(a)(2)(A).

- 11 -

ADVERSARY COMPLAINT FOR NON-DISCHARGEABILITY   Case No. 20-51735

rights, warranting an award of punitive damages against them.

94. Defendant's actions and conduct constituted a taking of Plaintiff money by fraud; and therefore the debt is non-dischargeable under 11 U.S.C. § 523(a)(2).

### VI. SECOND CAUSE OF ACTION
Non-Dischargeability of Debt
(11 U.S.C. § 523(a)(4))

95. Plaintiff re-alleges and incorporates by reference all paragraphs above as though fully set forth in this cause of action.

96. Section 523(a)(4) of title 11 provides that a "discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."[3]

97. As managing member of Paragon, Defendant was a fiduciary to Plaintiff, who was a member of Paragon.

98. As a fiduciary, Defendant owed Plaintiff the highest duties of care, good faith, honesty, and fair dealing, and to duly act in the best interests of Plaintiff at all times.

99. Defendant had a duty to not commit fraud against Plaintiff or defalcate Plaintiff's funds.[4]

100. As alleged above, Defendant committed fraud by misrepresenting material information to Plaintiff. Defendant had a duty to disclose all material information that he knew or reasonably could have known concerning the investments and various transactions.

101. Defendant also committed defalcation by misappropriating Plaintiff's funds and failing to properly account for such funds.

102. Defendant has breached his fiduciary duties to Plaintiff.

---

[3] 11 U.S.C. § 523(a)(4).
[4] *In re Hemmeter,* 242 F.3d 1186, 1190–91 (9th Cir. 2001) ("The definition of 'defalcation' includes both the 'misappropriation of trust funds or money held in any fiduciary capacity; [and the] failure to properly account for such funds.' ... [T]he essence of defalcation in the context of § 524(a)(4) is a failure to produce funds entrusted to a fiduciary.").

103. As a direct and proximate result of Defendant's breaches, Plaintiff has suffered substantial damage.

104. Defendant also committed embezzlement. Plaintiff paid Defendant and his limited liability company over $1 million which were to be utilized in the purchase of real properties.

105. In fact, Defendant did not utilize the money to purchase the real properties. Rather, Defendant swindled the money from the Plaintiff. Defendant admitted that he owed Plaintiff **$1,126,000.00** that Plaintiff had invested and transferred to Paragon.

106. Defendant had returned only **$48,000.00** to Plaintiff, leaving a balance of **$1,078,000.00** plus interest.

107. As a direct and proximate result of Defendant's fraud, defalcation, and embezzlement, Plaintiff has suffered substantial damage.

108. Defendant has acted with malice, oppression, and fraud, and in conscious disregard of Plaintiff's rights, warranting an award of punitive damages against Defendant.

109. Defendant's actions and conduct constituted fraud, defalcation, and embezzlement; and therefore the debt is non-dischargeable under 11 U.S.C. § 523(a)(4).

### VII. THIRD CAUSE OF ACTION
Non-Dischargeability of Debt
(11 U.S.C. § 523(a)(6))

110. Plaintiff re-alleges and incorporates by reference all paragraphs above as though fully set forth in this cause of action.

111. Pursuant to 11 U.S.C § 523(a)(6), a debt incurred by a debtor who commits willful and malicious injury to another entity is nondischargeable.

112. As alleged above, Defendant defrauded Plaintiff, through material misstatements and omissions, in connection with the real estate investment of the Wetmore Property and Buttner Property.

113. Defendant acted willfully, maliciously, and with deliberate intent to deceive Plaintiff. Defendant acted willfully in that he knew that the information he provided to Plaintiff to induce Plaintiff to invest in the properties was false or materially misleading.

114. Defendant acted maliciously in that he made such material misrepresentations to induce Plaintiff into investing in Defendant's scheme.

115. Defendant's conversion of Plaintiff's funds also constitutes malicious and willful injury.[5]

116. Plaintiff's money was transferred to Paragon for the purpose of investing in the Wetmore Property and Buttner Property pursuant to the Membership Agreement and Defendant's promises.

117. Instead, Defendant took these funds for his own personal use.

118. As a direct and proximate result of the Defendant's misconduct, Plaintiff has suffered substantial and irreparable damage.

119. Additionally, Defendant has acted with malice, oppression, and fraud, and in conscious disregard of Plaintiff's rights, and thus Plaintiff is entitled to an award of punitive damages against Defendant.

120. Because Defendant's actions and conduct were malicious and willful, the debt is non-dischargeable under 11 U.S.C. § 523(a)(6).

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

a. An award of **$1,078,000.00** plus interest, attorney fees, and costs;
b. An award of punitive damages against Defendant;
c. A determination that the debt owed to Plaintiff by Defendant is nondischargeable; and
d. Such other and further relief as the Court deems just and proper.

---

[5] *In re Bailey*, 197 F.3d 997, 1000 (9th Cir. 1999) (conversion of another's property without his or her knowledge or consent, done intentionally and without justification and excuse, to the other's injury, constitutes a willful and malicious injury for § 523(a)(6)).

- 14 -
ADVERSARY COMPLAINT FOR NON-DISCHARGEABILITY          Case No. 20-51735
Case: 21-05007   Doc# 1   Filed: 03/20/21   Entered: 03/20/21 17:10:34   Page 14 of 15

Respectfully submitted,

FARSAD LAW OFFICE, P.C.

/s/ *Arasto Farsad*         Dated: March 19, 2021
By: Arasto Farsad, ESQ.
    Attorney for Plaintiff
    RAJANI KOLLI